# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1515-17T2

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

C.C.,

     Defendant,

and

B.C.,

     Defendant-Appellant.

_____

IN THE MATTER OF K.C.,

     a Minor.

_____

Submitted November 1, 2018 – Decided December 26, 2018

Before Judges O'Connor and Whipple.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FN-02-0186-15.

Joseph E. Krakora, Public Defender, attorney for appellant (Deric D. Wu, Assistant Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Julie B. Colonna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Danielle Ruiz, Designated Counsel, on the brief).

PER CURIAM

Defendant B.C.[1] (Brad) appeals from the April 1, 2016, Family Part order after a fact-finding trial wherein the judge determined Brad had abused or neglected his son. We affirm.

Brad and C.C. (Claire) are the biological parents of K.C. (Ken), born June 23, 2003. Ken was diagnosed as being on the autism spectrum and is homeschooled. Brad was actively involved parenting Ken as a primary caretaker and teacher. On November 15, 2014, during an argument between Brad and Claire, Brad threatened to pour bleach on Claire's clothing. The encounter

---

[1] We use pseudonyms to protect the identity of the family and because it allows for ease of reference when family members have similar initials.

2

A-1515-17T2

resulted in Brad pouring bleach on Ken. Brad asserted it was an accident and he never intended to hurt Ken.

Brad was arrested and charged with child endangerment and aggravated assault. Emergency Medical Service workers poured saline solution on Ken and advised him to take a shower. A Division of Child Protection and Permanency (Division) Special Response Unit worker visited the family home and observed several red burn marks on Ken's arm. Claire obtained a temporary restraining order against Brad that she later withdrew. The next day, Ken was treated at a hospital emergency room for first-degree burns.

On November 20, 2014, the Division's investigative worker spoke with Brad. Brad acknowledged his argument with Claire and admitted taking Claire's clothes and attempting to pour bleach on them. He claimed Claire pushed him and that is what caused him to spill the bleach onto the clothing and Ken.

The Division worker told Brad the Division would be implementing a safety protection plan, requiring Brad to stay away from the home and Ken unless under supervision. Brad told the worker he would comply with the plan but he did not sign the safety plan.

On January 15, 2015, the Division filed a verified complaint and an order to show cause pursuant to N.J.S.A. 9:6-8.21 and N.J.S.A. 30:4C-12 against

3

Claire and Brad for care and supervision of Ken. The Family Part judge granted the Division's application. Claire retained physical custody of Ken; however, the court barred Brad from the family home and required contact between him and Ken be supervised.

On January 29, 2015, the court ordered the parents to comply with services, including domestic violence counseling, couples counseling, and parenting classes. Brad had weekly supervised visits with Ken. On February 4, 2015, Division worker Patrick Yan met with Claire at the family home. Yan advised Claire he would make unannounced visits to the home and Brad was not to be with Ken unsupervised. Yan told Claire if Brad was with Ken unsupervised, the Division could remove Ken from the home.

On March 6, 2015, when Yan conducted an unannounced home visit he saw what he suspected to be Brad's car. Yan did not find Brad in the home and Ken said he had not seen his father but missed him. Yan called Brad and reiterated that if he were found to be in the home with Ken it could lead to Ken's removal.

On March 12, 2015, in lieu of a fact-finding hearing regarding the Division's allegations under Title 9, Brad stipulated that because of the November 2014 "disagreement" between him and his wife, it was in Ken's best

4

interest for his family to accept Division services under Title 30. The Title 9 action was dismissed; however, the judge maintained the restraints against Brad.

The next day, Yan conducted an unannounced visit where he again observed what he thought was Brad's car. Yan was unable to contact Claire. Yan called his supervisor and then asked the police to remove Ken if Brad was in the home. Ultimately, Brad opened the door and was in the home with Ken unsupervised.

Brad was visibly irate and yelled, but did not resist Ken's removal. Yan alleged Brad told Ken the Division was going to kidnap him, causing Ken to become upset. Claire arrived home soon after; she said that she did not know Brad would be at the house and that she had left the house to run errands that morning. The Division removed Ken from the home and placed him in the care of a family friend.

The caseworker spoke with Ken regarding what happened. Ken stated he lived with his mother and father, he last saw his father "today," his father slept with Claire the night before, and that his father never lived anywhere else.

On March 17, 2015, the Division filed a new complaint and reinstated the Title 9 litigation. The court ordered that Ken reside with the family friend and contact between Ken and Claire be supervised by the friend. The Division would

supervise Brad's contact with Ken. The court determined the emergent removal of Ken was appropriate because Brad violated the court's order.

The Family Part judge held a fact-finding trial August 14 and November 19, 2015. The Division submitted evidence and testimony from Division workers Yan and Quesy Ithier. The judge also attempted to interview Ken on November 19, 2015, but the interview was cut short because Ken became upset.

On April 1, 2016, the judge issued an oral decision and order finding Brad abused or neglected Ken. The judge found Yan and Ithier were credible witnesses, determined Brad was aware of the January 15, 2015 court order restricting his contact with Ken, and violated the order when he was in the home with Ken without supervision. Further, because at the time Brad had not engaged in services to address domestic violence and anger management, Brad placed Ken at a substantial risk of harm.

On April 7, 2016, the court entered a disposition order continuing Brad's restraints but allowing him additional time to complete services so the Title 30 litigation could be dismissed without additional restraints on his contact with his son. On October 19, 2017, the court dismissed the litigation and continued the parents' joint legal custody of Ken based upon Brad's compliance with services. This appeal followed.

A-1515-17T2

On appeal, Brad argues the Division provided no evidence his unsupervised time with his son created an imminent and substantial risk to the child. We disagree.

"We have a strictly limited standard of review from the fact-findings of the Family Part judge." N.J. Div. of Youth & Family Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010). "[We] 'defer to the factual findings of the trial court because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a feel of the case that can never be realized by a review of the cold record.'" N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43 (2010) (quoting N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008)).

Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). This deference applies "unless it is determined that they went so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007).

Questions of law determined by the trial court require de novo review by the appellate court. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016)

(citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The definition of abuse or neglect under N.J.S.A. 9:6-8.21(c) is as follows:

> (4) [A] child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parents or guardian, as herein defined, to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court . . . .

Our Supreme Court has said the standard for abuse and neglect is met when a parent's conduct is at least "grossly or wantonly negligent." G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999). A parent "fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails [to] adequately supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181. In making this determination, courts analyze the harm to the child and whether the harm could have been prevented. Id. at 182. The Division must show substantial and imminent danger or substantial risk of harm to the child, but need not wait until the child is harmed. N.J. Dep't

of Children & Families, Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 22-23 (2013).

The Family Part judge found Brad was aware of the order restricting his contact with his son, yet Brad violated the order by being in the home alone with Ken without the requisite supervision. Nevertheless, the court made clear the violation of the order did not automatically necessitate a finding of abuse or neglect. However, the fact that Brad previously injured Ken during a domestic dispute and Brad did not engage in services to mitigate the risk of harm his actions posed to Ken, required restricting Brad's contact with Ken to protect the child from imminent and substantial risk of harm. Under those circumstances, the court found Brad's willful violation of an order restricting unsupervised contact fell short of the exercise of a minimum degree of care.

Brad argues the Division did not articulate a specific type of harm to Ken caused by the unsupervised contact. However, Ken was harmed when the domestic dispute between Brad and Claire resulted in bleach being poured on Ken. As a direct result, restraints were placed on contact between Ken and Brad. On March 12, 2015, although he did not stipulate to abuse or neglect for the bleach incident, Brad stipulated his involvement in a disagreement between himself and his wife led to the family needing Division services. He violated

the court order less than twenty-four hours later. Notably, there is substantial evidence in the record Brad knew his unsupervised contact with Ken could result in the child's removal, thus his intentional defiance of the court's order was knowing and willful gross negligence that resulted in the imminent harm of further destabilizing Ken's life because he was again removed from his home. Given evidence of Brad's willful violation of a court order and failure to address his behavioral problems, the Division provided sufficient evidence imminent harm could have resulted and, in fact, did result from Brad's unsupervised presence in the home.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION